1342-15

NO. PD-1342-15

IN THE

COURT OF CRIMINAL APPEALS

FOR THE

STATE OF TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

DEC 18 2015

Abel Acosta, Clerk

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 18 2015

Abel Acosta, Clerk

Hector Tellez,
                    Appellant

vs.

THE STATE OF TEXAS,
                    Appellee

Petition for Review of the
Eighth Court of Appeals
Judgment in No. 08-13-00141-CR
affirming conviction in Cause No. 20120D04723
from the 384th Judicial District Court
of El Paso County, Texas

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW Hector Tellez, hereinafter referred to as

Petitioner, who petitions the Court to review the judgment

affirming his conviction in Cause No. 20120D04723

STATEMENT REGARDING ORAL ARGUMENT

Petitioner waives oral argument.

1.

①

# Table of Contents

Statement Reguarding Oral Argument    Pg. 1

Statement of The Case    Pg. 2

Statement of Procedural History    Pg. 2

Grounds For Review    Pg 3

Statement of the Facts    Pg. 3

Argument    Pg. 3

Conclusion And Prayer for Relief    Pg. 5

Certificate of Service    Pg. 6

Appendix    Pg 7

## Case Law / Exibits

6th Amendment Constitution of America    Pg. 2

545.303 + 545.058 Tex. Trans. Code    Pg 2, 4

Strickland v. Washington, 466 US 668, 683-86 104 S.Ct. 2052, 2062, 80L. Ed 2d 674 (1984    Pg. 3

Missouri v. Mc Neely U.S. 133 S.Ct. 1552, 1567-68, 185 L. Ed. 2d 696 (2013)    Pg. 3, 4

States Exibits 53, 54    Pg. 4

Rule 509    Pg. 4

Section 3.03 (b) Texas Penal Code    Pg. 5

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 18 2015

Abel Acosta, Clerk



## STATEMENT OF THE CASE

(Brief summary of why the PDR is being filed - rights that were violated, etc.). The Eighth District Court of Appeals failed to Acknowledge Petitioners 6th Amendment right to effective Assistance of Counsel. Counsel failed to exclude evidence related to unconstitutional blood draw, failed to exclude evidence from Petitioners priviledged hospital treatment records, object to alledged misstatements of law by prosecutors, request the trial courts to take judicial notice of section 545.303 and 545.058 of Texas Transportation Code and Counsel failed to request trial court to instruct the jury during the punishment phase of Petitioners sentencing to serve concurrently

## STATEMENT OF PROCEDURAL HISTORY OF THE CASE

Petitioner **Hector Tellez** was charged by indictment with **intoxication manslaughter and Aggrivated assault.**

Statement of the Case.

On **September 16**, 2015, the Eighth Court of Appeals affirmed Appellant's judgment holding **all issues overruled**.

The Petition for Discretionary Review is due on or before **December 15, 2015**. The opinion of the Eighth Court of Appeals

herein (copy attached) will be cited simply as "Opinion."

## GROUND FOR REVIEW:

The Eighth Court of Appeals has rendered a decision in conflict with applicable decisions of the Texas Court of Criminal Appeals when it held that Petitioner, Hector Tellez's counsel rendered effective and reasonable assistance in his counsel tou in defending Tellez on the charges of Intoxicated Manslaughter and aggrivated Assult.

## STATEMENT OF FACTS

ON July 8, 2011 Petitioner Hector Tellez was involved in a motor vehicial wreck which resulted in the death of A Jon Cervoni, Aaron Carrillo and the harm of A Mark Anthony Dobbs. Petitioner was also harmed and taken to the hospital for treatment. Petitioner was then taken to jail and charged with two Accounts of intoxicated manslaughter and aggrivated Assaltt with A deadly weapon. A jury found Petitioner guilty of All charges And Assed Punishment 20 years for count I and III and 15 years for Count V.

## ARGUMENT

According to Strickland V. Washington, 466 U.S. 668, 683-86, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984) Petitioner Hector Tellez's Counsel did Not me the minimum Standards of the two-prong test requirements.

Petitioner was subjected to An illegal blood test which was warrentless and unreasonable According to the fourth Amendment and Missouri v McNeely. U.S, 133 S.Ct. 1552, 1567-68, 185 L.Ed.2d 696 (2013). According to Missouri.

(3)

V. McNeely, the natural dissipation of alcohol in the bloodstream is not a per se exigent circumstance justifying a blood test without a warrant in all DWI cases. Petitioner's counsel failed to move to suppress the blood test evidence therefore rendering Ineffective Assistance of Counsel.

Counsel failed to exclude Petitioner's medical records which were admitted as State's Exhibits 53 and 54. Petitioner had indeed been admitted in to the William Beaumont Army Hospital related to drug and alcohol Abuse and treatment. Furthermore Petitioner had been asked personal questions and had confided in the examining hospital workers concerning personal drug and alcohol abuse. This confidential communication is protected by Rule 509. Petitioner's Counsel feel below the standard by not having Petitioner's Medical records excluded.

Counsel also failed to object to Misstatements of the law and Request Court to take Judicial Notice of Relevant law. According to Tex. Trans. Code Ann § 545.058 (A) Dobbs and Cervoni's vehical were pulled over on the shoulder faceing opposite of one another lights on which is a violation of the Tex. Tras. Code. Officer Armenderiz misstated the law by testifying that Dobbs and Cervoni did not violate the Transportation Code by parking on the shoulder in this manner. Counsels failure to object to Misstatements of law and Request Court to take Judicial Notice rendered Ineffective Assistance of Counsel.

Finally counsel failed to instruct the jury during the punishment phase of Petitioners sentencing to serve concurrently. According to Section 3.03 (b) of the Texas Penal Code Petitioners sentence may run concurrently or consecutively. The jury Asked for instruction and was not Advised of the rules in Section 3.03 (b). Had the trial court not failed to instruct Petitioners sentence would possibly be run concurrently. Furthermore Petitioners counsel failed to instruct A jury instruction during punishment phase with rendered Ineffective Assistance of Counsel.

## CONCLUSION AND PRAYER FOR RELIEF

As a result, Petitioner was harmed in that he did not get a fair trial.

Petitioner would argue that the opinion of the Eighth Court of Appeals does not follow opinions regarding Ineffective Assistance of Counsel.

For all of the reasons set forth above, Petitioner respectfully prays that this Court grant review upon this issue and upon such review, reverse the conviction and remand the case for a new

5

trial.

Respectfully submitted,

_____

## CERTIFICATE OF SERVICE

I, Hect_____, certify that a true and correct copy of the foregoing instrument was hand-delivered to the District Attorney's Office, 500 E. San Antonio, Room 201, El Paso, Texas 79901, and mailed to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711 on this the _____ day of _____, 2013.

_____

⑥

# A P P E N D I X

PAGE

EIGHTH COURT OF APPEALS' OPINION. . . . . . . . . . . . . . 1-7
       (be sure to attach)



| | § | |
|---|---|---|
| HECTOR TELLEZ, | § | No. 08-13-00141-CR |
| Appellant, | § | Appeal from |
| v. | § | 384th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20120D04773) |
| | § | |

## OPINION

Hector Tellez appeals his convictions of intoxication manslaughter (Counts I and III) and aggravated assault (Count V). A jury found Appellant guilty of Counts I, III, and V, and assessed his punishment at a fine of $10,000 and imprisonment for a term of twenty years on Counts I and III, and a fine of $10,000 and imprisonment for a term of fifteen years on Count V. The trial court ordered the sentence for Count III to run consecutively to the sentence for Count I, while the sentence in Count V will concurrently with Counts I and III. We affirm.

### FACTUAL SUMMARY

On July 8, 2011, a band called "Ancient of Days" played a concert at the Open Gate Church in Northeast El Paso. Mark Anthony Dobbs, Jon Cervoni, Aaron Carrillo, Brandon Beltran, and Austin Ramos were in the band. As Dobbs drove home in his parents' Nissan Sentra, he experienced car trouble and pulled onto the shoulder of Loop 375. Dobbs turned on

the vehicle's hazard lights and called Cervoni for help because he did not want to call his parents. Cervoni and Carrillo arrived within ten or fifteen minutes. Cervoni pulled his car in front of Dobbs' car so that the two cars were facing each other, and they attempted to start Dobbs' car with jumper cables but were unsuccessful. Dobbs and Cervoni got in Dobbs' car to call for assistance while Carrillo stood outside on the passenger side. Dobbs remembered the three of them talking and the next thing he remembered was waking up in the hospital. His father was present and told him that Cervoni and Carrillo were dead.

Evadne Atkinson, a registered nurse, was driving home on Loop 375 sometime after 11 p.m. when she saw a truck ahead of her that was driving on the shoulder rather than in a lane of traffic. The truck continued to travel on the shoulder and Atkinson suddenly saw it become airborne and flip. Atkinson did not see the truck's brake lights illuminate before the accident. Atkinson stopped and got out of her car. She saw a man, whom she identified at trial as Appellant, coming from the direction of the truck. Atkinson asked Appellant if he was okay and he replied that he could not find his cell phone. Appellant was staggering as he walked and he wandered out into the roadway. Atkinson described him as being oblivious to everything going on around him. Based on her experience, Atkinson concluded that Appellant was intoxicated. After Atkinson guided Appellant out of the roadway, she went over to one of the other vehicles at the scene and found two passengers. The person seated in the driver's seat was dazed and unable to respond, but he was breathing and did not have any visible injuries. The person on the passenger's side was pinned against the dashboard, barely breathing, and unresponsive. Other motorists stopped, and after calling 911, they removed the driver from the vehicle.

El Paso Police Officer Adrian Armendariz is assigned to the Special Traffic Investigations and was called out to investigate the collision. His investigation showed that the Toyota Tundra struck the rear of the Nissan Sentra with such force that the trunk was pushed into the front passenger area of the vehicle and the right rear tire was immediately behind the front passenger seat. Carrillo's body was thrown 79 feet by the force of the collision. Armendariz found no evidence that Appellant applied his brakes. An open 30-pack of Budweiser beer was found next to the Tundra. Several of the cans were open and empty. A civilian witness at the scene testified that the inside of the Tundra smelled like alcohol.

El Paso Police Officer Daniel Conway arrived at the accident scene and asked Appellant for identification. Appellant's speech was slurred and he had a strong odor of alcoholic beverages on his breath as he spoke to Conway. Appellant volunteered to Conway that he had been on his cell phone at the time of the accident. Conway placed Appellant in handcuffs and told Appellant that he was under arrest for intoxication assault. Appellant was transported to Beaumont Army Hospital in an ambulance. Appellant refused to state his name when asked and he claimed that the cars were in an accident before he arrived at the scene.

Officer Raul Lom was dispatched to the scene of the accident and he spoke with civilian witnesses. Lom determined that the collision was caused by an intoxicated driver and he went to Beaumont Army Hospital where Appellant was being treated. Appellant would not respond when Lom asked him to identify himself. Lom told Appellant he was under arrest and administered the *Miranda* warnings to him. He also read the statutory warnings form known as the DIC-24 to Appellant and asked Appellant for a specimen of his blood. Appellant did not

- 3 -

respond. At Lom's request, a nurse drew a specimen of Appellant's blood using a kit provided by Lom. Analysis of that specimen showed that Appellant's blood alcohol level was .29.

The jury found Appellant guilty of intoxication manslaughter of Jon Cervoni (Count I), intoxication manslaughter of Aaron Carrillo (Count III), and aggravated assault with a deadly weapon of Mark Dobbs. Further, the jury assessed Appellant's punishment at a fine of $10,000 and imprisonment for a term of twenty years on Counts I and III, and a fine of $10,000 and imprisonment for a term of fifteen years on Count V. The trial court ordered the sentence for Count III to run consecutively to the sentence for Count I, while the sentence in Count V will run concurrently with Counts I and III.

## AMENDED BRIEF

It is necessary to address the effect of the filing of an amended brief by Appellant on our consideration of the issues presented on appeal. Appellant filed an original brief on November 22, 2013 raising three issues: (1) the blood evidence was obtained in violation of the Fourth Amendment; (2) trial counsel was ineffective because he failed to object to the blood evidence; and (3) the evidence was insufficient to support Appellant's convictions. After the State filed its brief, we granted Appellant's motion to substitute appellate counsel. The El Paso County Public Defender's Office subsequently filed a motion on behalf of Appellant to rebrief the case because Appellant was not satisfied with the performance of his prior appellate counsel. We granted that motion in order to protect Appellant's right to the effective assistance of counsel on appeal and permitted Appellant to file an amended brief even though it delayed submission of this case. *See* TEX.R.APP.P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on

- 4 -

whatever reasonable terms the court may prescribe."). In his amended brief, Appellant attempts to incorporate portions of the argument raised in his original brief. The filing of an amended brief, in contrast with a supplemental brief, operates to replace the original brief. *See Florence v. State*, No. 01-11-00822-CR, 2013 WL 3957696 at *1 n.1 (Tex.App.--Houston [1st Dist.] July 30, 2013, no pet.)(not designated for publication). Consequently, we have restricted our review to the amended brief and have not considered the original brief filed by Appellant's prior appellate counsel.

## INEFFECTIVE ASSISTANCE

In Issue One, Appellant argues that he was denied the effective assistance of counsel because his attorney failed to: (1) exclude evidence related to an unconstitutional blood draw; (2) exclude evidence from his privileged hospital-treatment records; (3) request an interpreter for him during the guilt/innocence phase of trial; (4) object to alleged misstatements of law by the prosecutors; (5) request the trial court to take judicial notice of Sections 545.303 and 545.058 of the Texas Transportation Code; and (6) request the trial court to instruct the jury during the punishment phase that Appellant's sentences could be served consecutively or concurrently.

### Standard of Review

Both the United States and the Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX.CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 1.05 (West 2005). This right includes the right to reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668, 683-86, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court set forth the standard of review for evaluating

- 5 -

claims of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The two-prong *Strickland* test requires Appellant to show that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's performance prejudiced his defense. *Id.* Prejudice requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.*; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002); *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Appellant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). In analyzing a claim for ineffective assistance, we begin with the strong presumption that counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Appellant must overcome the presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, and that, under the circumstances, the challenged action might be considered sound trial strategy. *Thompson*, 9 S.W.3d at 814. Counsel's action or inaction will be found reasonable if the record is silent as to the facts, circumstances, or rationale behind a particular course of action. *Id.* If trial counsel is not given an opportunity to explain his actions, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). Appellant filed a motion for new trial, but he did not allege ineffective assistance. Because the record does not reflect the rationale for any of the

- 6 -

challenged acts or omissions, we will not find deficient performance unless Appellant meets his burden of showing that counsel's conduct was so outrageous that no competent attorney would have engaged in the same conduct.

*The Blood Evidence*

Appellant first asserts that counsel's performance was deficient because he did not seek to suppress the blood test results on the ground that the warrantless search was unreasonable under the Fourth Amendment. He argues that counsel should have moved to suppress the blood test evidence based on *Missouri v. McNeely* which held that the natural dissipation of alcohol in the bloodstream is not a *per se* exigent circumstance justifying a blood test without a warrant in all DWI cases. *Missouri v. McNeely*, --- U.S. ---, 133 S.Ct. 1552, 1567-68, 185 L.Ed.2d 696 (2013).

*McNeely* was decided on April 17, 2013. The trial of this case began two days later, on April 19, 2013, and the blood test evidence was admitted on April 23, 2013. Obviously, no Texas appellate court had addressed the impact of *Missouri v. McNeely* on Texas' mandatory blood draw statute at the time this case was tried. On January 13, 2014, the U.S. Supreme Court vacated the San Antonio Court of Appeals' decision in *Aviles v. State*, cite, and remanded the case for reconsideration in light of *McNeely*. *Aviles v. Texas*, --- U.S. ---, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014). Ten days later, the Thirteenth Court of Appeals was the first Texas intermediate appellate court to apply *McNeely* when it decided *State v. Villarreal* on January 23, 2014. *See State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex.App.--Corpus Christi Jan. 23, 2014, pet. granted)(holding repeat offender provision of the mandatory

blood draw statute did not constitute an exception to the Fourth Amendment's warrant requirement).[1] Other courts of appeals have since concluded that Texas' mandatory blood draw and implied consent statutes do not provide an exception to the warrant requirement. *See Gentry v. State*, No. 12-13-00168-CR, 2014 WL 4215544 at*3-4 (Tex.App.--Tyler Aug. 27, 2014, pet. filed); *Aviles v. State*, 443 S.W.3d 291, 293-94 (Tex.App.--San Antonio 2014, pet. filed); *State v. Ballard*, No. 11-13-00224-CR, 2014 WL 3865815 at *3 (Tex.App.-Eastland July 31, 2014, pet. filed); *Weems v. State*, 434 S.W.3d 655, 665-66 (Tex.App.--San Antonio 2014, pet. granted); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 at *2-4 (Tex.App.--Texarkana Apr. 30, 2014, pet. granted); *Reeder v. State*, 428 S.W.3d 924, 930 (Tex.App.--Texarkana 2014, pet. granted); *Sutherland v. State*, 436 S.W.3d 28 (Tex.App.--Amarillo 2014, pet. filed). We recently applied *McNeely* and held that Section 724.012(b) does not provide an exception to the warrant requirement. *Burcie v. State*, No. 08-13-00212-CR, 2015 WL 2342876 (Tex.App.--El Paso May 15, 2015, pet. filed).

Counsel's performance must, however, be measured against the state of the law in effect during the time of trial. *Ex parte Chandler*, 182 S.W.3d 350, 359 (Tex.Crim.App. 2005). At the time this case was tried, it was accepted law in Texas that blood drawn in compliance with the Section 724.012(b) of the Transportation Code was a valid search. *See Beeman v. State*, 86 S.W.3d 613, 615 (Tex.Crim.App. 2002). While *Missouri v NcNeely* was decided two days before trial on the merits began, its impact on Texas law was decidedly unsettled when this case

---

[1] The Court of Criminal Appeals issued an opinion affirming the court of appeals' decision in *State v. Villiarreal*, but it has since granted rehearing. *See State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex.Crim.App. November 26, 2014)(rehearing granted).

was tried. Furthermore, the record does not reflect counsel's reasoning for not moving to suppress the blood test results and we do not find that counsel's failure to seek suppression based on *McNeely* was so outrageous that no competent attorney would have made the same decision. Under these circumstances, we conclude that Appellant has failed to show that his counsel's performance was deficient. *See Bernal v. State*, No. 02-13-00381-CR, 2014 WL 5089182 at *4-5 (Tex.App.--Fort Worth Oct. 9, 2014, no pet.)(concluding that appellant failed to show ineffective assistance of counsel related to allegation that counsel did not move to suppress evidence under *Missouri v. McNeely* where the law was unsettled at the time of appellant's trial and counsel was not given an opportunity to explain his reasoning).

*Appellant's Medical Records*

Appellant also contends that trial counsel should have sought exclusion of his medical records, admitted as State's Exhibits 53 and 54, because the records are related to his treatment for drug and alcohol abuse, and as such, the records are privileged and inadmissible under TEX.R.EVID. 509(b). Rule 509(b) provides that there is no physician-patient privilege in a criminal case, but a confidential communication is not admissible in a criminal case if made: (1) to a person involved in the treatment of or examination for alcohol or drug abuse; and (2) by a person being treated voluntarily or being examined for admission to treatment for alcohol or drug abuse. TEX.R.EVID. 509(b). When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible. *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex.Crim.App. 2002).

- 9 -

State's Exhibits 53 and 54 were admitted as business records pursuant to TEX.R.EVID. 902(10). State's Exhibit 53 contains the medical records from William Beaumont Army Hospital related to Appellant's treatment in the emergency department on July 9, 2011 for his injuries suffered in the accident. These records are unrelated to treatment for drug or alcohol abuse and there is nothing in the records indicating that Appellant made a confidential communication to a person involved in the treatment of or examination for Appellant's admission to drug or alcohol treatment. Consequently, State's Exhibit 53 is not subject to a Rule 509(b) objection. An attorney does not render deficient performance by failing to make a meritless objection. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex.Crim.App. 2004); *Patrick v. State*, 906 S.W.2d 481, 496 (Tex.Crim.App. 1995).

State's Exhibit 54 contains approximately 105 pages of medical records related to Appellant's admission to the hospital's ICU unit for treatment of his accident-related injuries on July 9, 2011. The adult admission assessment form reflects that Appellant drinks alcohol and uses recreational drugs. The record does not reflect that Appellant provided this information to a person involved in the treatment of or examination for Appellant's admission to drug or alcohol treatment. Consequently, this portion of State's Exhibit 54 is admissible. Another portion of State's Exhibit 54 contains a one-page note titled "NURS Alcohol Abuse." "Alcohol abuse" is the sole diagnosis written in the section of the note titled "nursing diagnoses." In the "expected outcomes" section of the note, the author wrote that the patient "acknowledges alcohol problem and the need for support to maintain alcohol free lifestyle" and "has contract and AA or other community support and mental health groups." The note also states Appellant should be

- 10 -

observed for withdrawal symptoms, including hallucinations and "DTS" and provided with medications to control withdrawal symptoms.

Assuming for the sake of argument that Appellant's statements satisfy the first part of Rule 509(b)'s test, the record does not support a finding that the second part of the test is satisfied because there is no evidence that Appellant was being treated voluntarily for alcohol or drug abuse or that he was being examined for admission to treatment for alcohol or drug abuse. *See* TEX.R.EVID. 509(b). The nurse's assessment of Appellant was made during the course of his one-day hospital stay in connection with his medical treatment for injuries suffered in the accident. Consequently, the evidence does not support a finding that State's Exhibit 54 was inadmissible under Rule 509(b). Appellant's trial counsel was not required to make a meritless objection. *See Ex parte White*, 160 S.W.3d at 53; *Patrick*, 906 S.W.2d at 496.

*Failure to Request Interpreter*

Appellant also asserts that counsel was ineffective because he failed to request an interpreter for him during the guilt/innocence phase of trial. Under the Sixth Amendment, an accused has the right to be present at his trial and confront the witnesses brought against him. U.S. CONST. amend. VI. Encompassed within these rights is the right to understand the testimony of the witnesses. *See Garcia v. State*, 149 S.W.3d 135, 140-41 (Tex.Crim.App. 2004). Consequently, if an accused does not understand English, he must be provided with an interpreter. *Garcia*, 149 S.W.3d at 140-41. This constitutional requirement is codified in Article 38.30. *See* TEX.CODE CRIM.PROC.ANN. art. 38.30 (West Supp. 2014). The Court of Criminal

- 11 -

Appeals has determined that the right to an interpreter is a category two-waiveable only *Marin*[2] right. *Garcia*, 149 S.W.3d at 144. Therefore, the judge has an independent duty to implement this right in the absence of a knowing and voluntary waiver by the defendant. *Id.* The trial judge may become aware of the defendant's language problem either by being informed of it by one or both parties or by noticing the problem sua sponte. *Id.* Article 38.30(a) addresses the procedure to be followed if a party files a motion for appointment of an interpreter. TEX.CODE CRIM.PROC.ANN. art. 38.30(a).

To establish deficient performance based on an allegation that counsel failed to request appointment of an interpreter, Appellant must demonstrate that he was entitled to the assistance of an interpreter and that the trial court would have erred in denying a motion on that basis. *Ex parte Cockrell*, 424 S.W.3d 543, 546 (Tex.Crim.App. 2014). To be entitled to an interpreter, there must be a showing that the accused does not understand English. *See Hernandez v. State*, 862 S.W.2d 193, 198 (Tex.App.--Beaumont 1993, pet. ref'd).

Appellant asserts in his brief that he is a Spanish-speaker, but fluency in a language other than English does not demonstrate an inability to understand English. *See Abdygapparova v. State*, 243 S.W.3d 191, 201 (Tex.App.--San Antonio 2007, pet. ref'd). There is evidence in the record that Appellant understood English. Appellant appeared to understand and speak English at the scene of the accident. For example, he told Michael Rolon, "I'm sorry. My life's over. My life sucks." Armando Sifuentes, a firefighter/paramedic, approached Appellant and placed his hand on Appellant's shoulder while asking him if he was okay. Appellant slapped Sifuentes' hand off of his shoulder and said, "Leave me alone." Sifuentes repeated his question, and

---

[2] *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993).

Appellant said, "Just leave me alone." During the punishment phase, Appellant chose to testify and he had the following exchange with the trial court when he was called to testify:

[Court]: Mr. Tellez, please stand.

(Defendant approaches witness table)

[Court]: Raise your right hand. Do you swear to tell the truth -- well, do you need the interpreter?

[Appellant]: I do understand English, but I need her for answering questions.

[Court]: That's fine.

(Witness sworn through duly sworn interpreter)

[Court]: All right. Please be seated. Mr. Tellez, I know you understand English, but we have the interpreter here to interpret your responses in English. So she's going to interpret the questions into Spanish for you, and she will interpret your responses back into English.

So you respond in Spanish and she'll interpret your responses. Okay?

[Appellant]: Okay.

Appellant's admission to the trial court that he understood English severely undercuts his claim on appeal that the trial court was required to appoint an interpreter for him during guilt-innocence so that he could understand the proceedings and the testimony of the witnesses against him. The record does not support Appellant's claim that he does not understand English nor does it show that the trial court would have abused its discretion by denying a request for appointment of an interpreter during the guilt-innocence portion of trial. Trial counsel did not render deficient performance by failing to ask the trial court to appoint an interpreter for the guilt-innocence phase of trial.

- 13 -

Appellant next argues that counsel's performance was deficient because he did not object to misstatements of law by the prosecutor and two witnesses. He directs our attention to Officer Adrian Armendariz's testimony that Dobbs and Cervoni had not violated any traffic laws by parking their vehicles on the shoulder because Dobbs' vehicle was broken down and Cervoni was attempting to provide a jump start. Appellant maintains that Cervoni violated Section 545.303 of the Texas Transportation Code by parking his vehicle on the shoulder so that it faced Dobbs' vehicle and counsel should have asked the trial court to take judicial notice of the statute. Section 545.303 addresses stopping or parking a vehicle on a roadway. TEX.TRANSP.CODE ANN. § 545.303 (West 2011). "Roadway" is defined in the Transportation Code as "the portion of a highway, other than the berm or shoulder, that is improved, designed, or ordinarily used for vehicular travel." TEX.TRANSP.CODE ANN. § 541.302(11). Thus, Section 545.303 does not pertain to stopping or parking a vehicle on the shoulder.

Section 545.058, which addresses driving on an improved shoulder, provides as follows:

(a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:

(1) to stop, stand, or park;

(2) to accelerate before entering the main traveled lane of traffic;

(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

- 14 -

(5) to allow another vehicle traveling faster to pass;

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

TEX.TRANSP.CODE ANN. § 545.058(a). The record reflects that Dobbs stopped his car and parked on the shoulder because the vehicle was disabled. Cervoni parked his vehicle on the shoulder to render assistance to Dobbs. Under the applicable law, neither of these drivers violated the Transportation Code. Thus, Armendariz did not misstate the law by testifying that Dobbs and Cervoni did not violate the Transportation Code by parking on the shoulder.

Appellant also asserts that counsel should have objected to Armendariz's testimony that Appellant violated a traffic law by driving on the shoulder. As noted by the State, the prosecutor asked Armendariz whether it is legal to drive on the shoulder "as if it were a lane of travel," and Armendariz replied that it is illegal. The evidence at trial showed that Appellant was driving on the shoulder when he struck the parked cars. There is no evidence that any of the circumstances set forth in Section 545.058 were present in this case. Consequently, Armendariz's testimony was not a misstatement of the law and an objection to the testimony would not have been valid.

Appellant additionally alleges that trial counsel failed to object to Officer Lom's testimony that Appellant's blood was drawn pursuant to Section 724.012 of the Transportation Code even though the decision in *Missouri v. McNeely* "drew the constitutionality of the statute . . . into serious question." We understand Appellant to argue that the officer's testimony was a misstatement of the law. At the time this case was tried, it was generally understood that blood drawn in compliance with Section 724.012(b) of the Transportation Code was a valid

- 15 -

search. *See Beeman*, 86 S.W.3d at 615. As we stated in our discussion of Appellant's claim that counsel was ineffective because he did not move to suppress the blood evidence, *McNeely* was decided only two days before the trial in this case began and its impact on Texas law was unsettled. Appellant has failed to show that counsel's decision to not object to the testimony is so outrageous that no competent attorney would have made the same decision.

*Instruction on Concurrent/Consecutive Sentences*

Appellant also complains that trial counsel did not request a jury instruction during the punishment phase that Appellant's sentences could be served consecutively or concurrently. The State filed a motion requesting cumulative sentences pursuant to Article 42.08 of the Code of Criminal Procedure. During punishment deliberations, the jury sent out a note asking whether the sentences would be served consecutively or concurrently, and the trial court answered the jury by stating that all of the definitions and instructions that can be given to the jury are provided in the court's charge.

Section 3.03(b) of the Texas Penal Code provides that when a defendant is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of an offense under Section 49.07 or 49.08. TEX.PENAL CODE ANN. § 3.03(b)(1)(A)(West Supp. 2014). Further, Article 42.08(a) provides that the trial court has discretion to order that sentences run concurrently or cumulatively. TEX.CODE CRIM.PROC.ANN. art. 42.08(a)(West Supp. 2014). The Texas Legislature has assigned the task of cumulating sentences exclusively to the trial judge. *Beedy v. State*, 250 S.W.3d 107, 110 (Tex.Crim.App. 2008); *Barrow v. State*, 207 S.W.3d 377, 380

- 16 -

(Tex.Crim.App. 2006). Consequently, Appellant was not entitled to an instruction regarding the trial court's authority to order the sentences to be served consecutively or concurrently. *See Clay v. State*, 102 S.W.3d 794, 798 (Tex.App.--Texarkana 2003, no pet.); *Villarreal v. State*, No. 13-08-00601-CR, 2010 WL 2638486 at *2 (Tex.App.--Corpus Christi June 29, 2010, no pet.)(not designated for publication); *Manzano v. State*, No. 10-04-00323-CR, 2006 WL 348463 at *4 (Tex.App.--Waco Feb.15, 2006, pet. ref'd)(not designated for publication)(holding that due process does not require that the jury be given information about the trial court's ability to cumulate sentences or order them to run concurrently). Trial counsel is not required to request an instruction to which the defendant is not entitled.

Appellant has not demonstrated that any of the challenged actions or decisions of trial counsel amounted to deficient performance. Consequently, he has failed to establish his claim of ineffective assistance. Issue One is overruled.

## CRUEL AND UNUSUAL PUNISHMENT

In Issue Two, Appellant contends that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because the jury was not informed that the trial court could order the sentences to run consecutively or concurrently. As a prerequisite to presenting a complaint for appellate review, Appellant must present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling. TEX.R.APP.P. 33.1(a)(1)(A); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App. 1996). Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived by the failure to object. *Rhoades*, 934 S.W.2d at 120; *Curry v. State*, 910 S.W.2d 490, 496

- 17 -

(Tex.Crim.App. 1995). Appellant did not raise this complaint about his sentences at the time they were imposed or in his motion for new trial. Consequently, the asserted error is waived. Issue Two is overruled.

## CONCURRENT/CUMULATIVE SENTENCE INSTRUCTION

In Issue Three, Appellant asserts that he suffered egregious harm from the absence of an instruction in the punishment charge informing the jury that the trial court could order the sentences to run concurrently or consecutively. Appellate review of alleged jury charge error involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013). If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Wooten*, 400 S.W.3d at 606. Under this second step, the degree of harm necessary for reversal usually depends on whether the appellant properly preserved the error by objection. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003).

In addressing Appellant's assertion in Issue One that his trial counsel was ineffective because he did not request this instruction, we concluded that Appellant was not entitled to an instruction regarding the trial court's authority to order the sentences to be served consecutively or concurrently. *See Clay*, 102 S.W.3d at 798; *Villarreal*, No. 13-08-00601-CR, 2010 WL 2638486 at *2; *Manzano*, No. 10-04-00323-CR, 2006 WL 348463, at *4. Issue Three is overruled.

- 18 -

## CUMULATIVE ERROR

In his final issue, Appellant argues that the trial court erred by allowing his conviction to be based on "false testimony." Appellant does not claim that any of the witnesses committed perjury. He instead contends that the jury "was substantially misled by the cumulative effect of the repeated misstatements of law." This issue focuses on the complaints raised in Issues One through Three related to the alleged misstatements of law made by two police officers during their testimony and the trial court's failure to instruct the jury regarding the court's authority to order the sentences to be run concurrently or consecutively.

The Court of Criminal Appeals has recognized that a number of errors may be found harmful in their cumulative effect, but there is no authority holding that non-errors may in their cumulative effect cause error. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999). We have already determined that Appellant failed to establish that his trial counsel rendered ineffective assistance and the trial court did not err by failing to include an instruction in the punishment charge regarding the trial court's ability to order the sentences to run concurrently or consecutively. Consequently, there can be no cumulative error or harm. *See id.* Issue Four is overruled. Having overruled each issue, we affirm the judgment of the trial court.

September 16, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

- 19 -

Hector Tellez
Bdt# 1858884 12x55
Michael Unit
2664 FM 2054
Tennessee, Colony. Tx. 75886

Court of Criminal Appeal.
P.O. Box 12308
Capital Station
Austin, Texas 78711